

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LUIS MEDINA,

Plaintiff, *Counter-Defendant;

v.                                                    Case No. 8:10-cv-2134-T-35-AEP

JOHN WRIGHT, *ANDREW BERRY,
and *KELLI BERRY,

Defendants. *Counter-Plaintiffs;

v.

*TAMMY MEDINA,

*Counter-Defendant

_____/

## DEFENDANTS, ANDREW AND KELLI BERRY'S ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIM WITH JURY DEMAND

Come now, DEFENDANTS, ANDREW and KELLI BERRY, pro se, and file this, their Answer and Affirmative Defenses, in response to PLAINTIFF, Luis MEDINA's COMPLAINT, dkt. 1, with COUNTERCLAIMS and state the following:

### Introduction

Defendants, would first like to emphasize the fact that PLAINTIFF'S COMPLAINT lacks an element of the general rules of pleading, in that Rule 8 of the Federal Rules of Civil Procedure states in pertinent part, *"8(a) CLAIM FOR RELIEF. A pleading that states a claim for relief **must** contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support."*

1

factual comments on the Internet relating to the personal experiences suffered by DEFENDANTS while involved with EVATECH, INC.  DEFENDANTS both deny telephoning any of those listed.  As per their understanding of the term "*attack*", DEFENDANTS both deny unwarranted "*numerous personal attacks*" on PLAINTIFF. DEFENDANTS both deny making false claims about products, etc.  Again, PLAINTIFF'S claims also seek redress for EVATECH, who is not a party plaintiff.

4.  Defendant, KELLI BERRY, admits to posting the factual comment referred to in **Exhibit S** of COMPLAINT, and this statement speaks of the personal experience of DEFENDANT and refers to EVATECH, who is not a party plaintiff.

5.  Defendant ANDREW BERRY denies sending "*messages*" but admits to sending the single factual email referred to in **Exhibit T of COMPLAINT** and states that the statements are true and accurate with substantiated proof.  Defendant KELLI BERRY admits to helping ANDREW draft, proofread and send the referenced email, but as is evidenced it is "signed" by ANDREW BERRY.

6.  Defendant, ANDREW BERRY, denies sending email referenced in **Exhibit U** of COMPLAINT.  Defendant, KELLI BERRY, admits to sending a factual email to Mr. Muirhead, an independent dealer for EVATECH, INC., whose information is easily available on the EVATECH website, but as shown in PLAINTIFF'S Exhibit, it refers to EVATECH, INC., who is not a party plaintiff.


## COUNT FOUR: Theft of Intellectual Property and Trade Secrets

1-2:  DEFENDANTS lack sufficient knowledge to respond, as these claims do not name either ANDREW or KELLI BERRY.

3.  Denied by both Andrew and Kelli Berry.  In addition, EVATECH, INC. is not a party Plaintiff and not able to seek redress.


## COUNT FIVE:  Harassment

1.  Defendant, ANDREW BERRY, admits that a phone call was initiated by Plaintiff, LUIS MEDINA, but denies the date and the quote as referenced.

2.  DEFENDANTS lack sufficient knowledge to respond, as this claim does not name either ANDREW or KELLI BERRY.

3.  Defendant, KELLI BERRY, acknowledges sending referenced email in **Exhibit W of Plaintiff's COMPLAINT** to EVATECH shareholders, regarding the DEFENDANTS'

personal and factual experiences with MR. MEDINA and EVATECH, INC. Also, see PLAINTIFF'S **EXHIBIT Z in COMPLAINT**, page 2, email from CO-DEFENDANT, JOHN WRIGHT. The other dealer referenced is addressed in COUNTERCLAIM, following. In addition, this is for entities of EVATECH, not a party-plaintiff.

4.   Defendant, KELLI BERRY, acknowledges sending referenced email in **Exhibit X** of Plaintiff's COMPLAINT to TAMMY MEDINA at her EVATECH company email address in **response** to the email initiated by MRS. MEDINA through her company email address; said email is included at the end of Plaintiff's **Exhibit Y.** PLAINTIFF'S **Exhibit X** is actually an addendum to PLAINTIFF'S **Exhibit Y**'s email, so it is misleadingly out of chronological order in the Exhibits. In addition, this is for entities of EVATECH, not a party-plaintiff.

5.   Defendant, KELLI BERRY, acknowledges sending referenced email in **Exhibit Y** of Plaintiff's COMPLAINT to TAMMY MEDINA at her EVATECH company email address in **response** to the email initiated by MRS. MEDINA through her company email address; said email is included at the end of Plaintiff's **Exhibit Y.** Regardless, these claims are for entities of EVATECH, not a party-plaintiff.


## COUNT SIX: Extortion

1-3:   DEFENDANTS lack sufficient knowledge to respond, as these claims do not name either ANDREW or KELLI BERRY.


## COUNT SEVEN: Loss of Income

1.   Denied by both ANDREW and KELLI BERRY. In addition, EVATECH, INC. is not a party PLAINTIFF and not able to seek redress. DEFENDANTS request strict proof of PLAINTIFF'S personal loss of income.

2.   DEFENDANTS lack sufficient knowledge to respond.

3-4:   DEFENDANTS lack sufficient knowledge to respond, as these claims do not name either ANDREW or KELLI BERRY.


## AFFIRMATIVE DEFENSES

A.   All COUNTS of PLAINTIFF'S COMPLAINT should be dismissed for not clearly establishing proper jurisdiction over DEFENDANTS.

4

B. DEFENDANTS, answering the COMPLAINT herein, allege that all allegations and counts brought forth therein fail to state a claim for which relief can be granted, and PLAINTIFF fails to plead the proper elements.

C. PLAINTIFF'S recovery is barred due to the doctrine of waiver and estoppel.

D. PLAINTIFF'S recovery is barred due to the doctrine of truth and substantial truth.

E. PLAINTIFF'S recovery is barred due to the assumption of risk PLAINTIFF assumed when breaching valid contracts. DEFENDANTS affirmatively state that any damages suffered by LUIS MEDINA'S and/or EVATECH'S reputation, customer relationships, and/or damages incurred are caused by LUIS MEDINA'S willful and reckless disregard of breach of contract, among other issues.

F. PLAINTIFF'S recovery under U.S. Patent Law is barred because of PLAINTIFF'S failure to comply with all conditions precedent in accordance with the requirements of the U.S. Code under U.S. Patent Law, relating to prior notice of infringement and product marking.

G. PLAINTIFF'S recovery under U.S. Patent Law is barred because of PLAINTIFF'S joint ownership of a patent that is the subject of infringement in this case.

H. PLAINTIFF'S recovery under U.S. Patent Law is barred because of PLAINTIFF'S prior art dated July, 2003, noting that PLAINTIFF'S patent date is August, 2004.

I. DEFENDANTS further assert the affirmative defense that the damages sought by PLAINTIFF are unconstitutionally excessive as applied.

J. PLAINTIFF has failed to mitigate requested damages, if any.

K. DEFENDANTS specifically deny all allegations, if any, and conclusions of law, if any, to which they did not specifically reply in the ANSWER to PLAINTIFF'S COMPLAINT.

L. DEFENDANTS reserve the right to plead additional defenses (or counter claims) that may be identified during investigation and/or course of discovery.

## REQUEST FOR RELIEF

Based upon these answers and affirmative defenses, the DEFENDANTS respectfully request that the Court enter a judgment dismissing the PLAINTIFF'S COMPLAINT in its entirety, on the merits, and with prejudice; holding that DEFENDANTS are the prevailing party; denying the

PLAINTIFF'S request for all requested relief; and awarding such other and further relief as the Court may find to be just and equitable.  DEFENDANTS further pray that this Court, award ANDREW and KELLI BERRY relief in the form of all costs to date.

# COUNTERCLAIMS

## JURISDICTION AND VENUE

1. DEFENDANTS incorporate herein by reference, each and every allegation, answer and denial contained in each of the above paragraphs.

2. Jurisdiction has assumed to have been established with the Court under the PLAINTIFF'S original COMPLAINT, dkt.1.

3. The Court has supplemental jurisdiction over any state law claims asserted in the COUNTERCLAIMS pursuant to 28 U.S.C. §1367.

4. Venue is assumed proper in this District under acceptance of PLAINTIFF'S COMPLAINT.

5. LUIS MEDINA is an individual who resides at 3153 Prides Crossing, Tarpon Springs, FL 34688, in Pinellas County.

6. EVATECH, INC. is a for-profit corporation, organized under the Laws of the State of Florida, and with the only listed business address as 3153 Prides Crossing, Tarpon Springs, FL 34688, in Pinellas County.

7. LUIS MEDINA is the registered agent, founder, CEO, majority shareholder and Manager of EVATECH, INC. at the address stated in #6.  The business and personal address for LUIS MEDINA are the same.

8. TAMMY MEDINA is an individual who resides at 3153 Prides Crossing, Tarpon Springs, FL 34688, in Pinellas County, and is employed with EVATECH, INC. at the same address.

9. Service of process can be, has been or will be perfected for the individuals and corporation listed above at the individuals'/corporation's business address as stated above.

## FACTUAL BACKGROUND OF DEFENDANTS/COUNTER-PLAINTIFFS

## KELLI BERRY (KELLI)

6

10.     Defendant/Counter-Plaintiff, **KELLI**, has been a lifetime Georgia resident, with the exception of approximately five years when her father was in the United States Air Force and the family was stationed in Mobile, Alabama and Guam, respectively, during the late 1960's and early 1970's. From a young age, KELLI began babysitting and even contemplated becoming a teacher due to her love for children. During her youth, she was very active in softball, receiving all-star and tournament status numerous times, once even pitching a no-hitter in the state championship. KELLI also participated in recreational cheerleading. In her mid-teens, she began modeling, but chose not to pursue it as a career due to her budding interest in business management.

11.     KELLI graduated high school with Honors in 1982, with a focus of study on business management and accounting; she was also a member of the BETA Club, the National Honor Society, and the Future Business Leaders of America. She was also named Vocational Office Training Student of the Year in 1982. When a junior in high school, KELLI began employment at a family floral business, where she handled the day-to-day responsibilities of the business office, including customer service, invoicing and accounts receivable, among other duties.

12.     In 1983, KELLI was given the opportunity to interview for a medical receptionist position with an Obstetrics and Gynecology Physicians' group. Although having no medical experience whatsoever, the doctors gave her a 90-day "trial" employment period. Following the trial period, she was given a raise and was soon responsible for the entire front office at the satellite location. KELLI married in 1987, and a year later she was given the front office position at the main office, where she remained until the birth of her second child in 1990. Her first child was born in 1988.

13.     Beginning in 1985, KELLI was a little league baseball assistant coach. She was the first female coach at a well-established baseball association and became manager of a team within 2 years. While 7 months pregnant with her first child, not only did her team receive first place in the age group, she was voted unanimously by the other managers, all men, to manage the tournament team that would represent her league at the championship (as a side-note, her team won the championship). After the birth of her second child, KELLI retired from coaching, but stayed active with the youth leagues as team mom and scorekeeper. She was also very active in youth football as team mom and "cheer" team mom for many years. While her children were in elementary school, more often than not, KELLI was volunteering in at least one of her children's classrooms and helping as one of the room mothers.

14.     KELLI was also actively involved as a Youth Sunday School teacher and Director of Children's Church Ministry in her church from 1989 until 1996, when her family moved to a new community. In her new community, after establishing her family in a new church, she also became actively involved as a Youth Sunday School and Vacation Bible School teacher. She and her husband were also the Directors of the Awanas Youth Group until 2000, after the sudden death of her brother.

7

15.     In 1990, after the birth of her second child, KELLI left her position in the medical office to stay at home with her children. At that time, she established a very successful home-based child care business. Her third and final child was born in 1994. The home-based childcare was "closed" after the decision was made to move the family to a new community.

16.     In August 1996, KELLI and her family moved. Within weeks, KELLI had found an open position as a Kindergarten teacher at a private school operated through a Baptist Church. She interviewed with the Director of the school and was immediately offered the position. During the period of August 1996 through May 2002, KELLI thrived and immensely loved her teaching position. Her yearly classroom count ranged from 12 students her first year to 17 students in her last year, and usually had a waiting list. KELLI never received a complaint from any of the children's parents during any school year, in fact, it was just the opposite. She received much praise from the parents, grandparents, other teachers, the school director and even the Church Pastor regularly. In 2002, with much sadness, KELLI left her teaching position to return to help manage a family member's floral business. On her final evening, at the Kindergarten graduation, KELLI was given a standing ovation to a standing room only sanctuary.

17.     In 2004, KELLI and her first husband amicably divorced, sharing custody of the children.

## ANDREW BERRY (ANDREW)

18.     Defendant/Counter-Plaintiff, ANDREW BERRY, a life-time Georgia resident, has always had a passion for the landscape industry and recalls loving to "cut the grass" when he was only about six years old. His love of the industry lead him to learn a great deal of information about lawnmowers and other landscape equipment from his grandfather who was a small engine mechanic and, for a time, owned and operated a mower repair shop. During elementary and middle school, ANDREW made spending money cutting neighborhood lawns.

19.     ANDREW graduated high school with Honors in 2002, with a focus of study on Business and Marketing; he was also a member of the BETA Club. During and for a period of time following high school, ANDREW was employed at several pizzerias, eventually working his way up to management. In August of 2003, he began schooling and training to become a National Certified Firefighter, completing the training in March 2004, receiving National Certification Firefighter 1 from the Georgia Fire Academy.

20.     After receiving his Firefighter's Certification in March 2004, ANDREW worked with the Paulding County Fire Department as a Fire Recruit and volunteer, as well as working a part-time job in the retail industry.

21.     In June 2004, ANDREW accepted a full-time position with a non-profit organization that assisted mentally challenged and disabled adults learn and adapt to independent living. His title was groundskeeper, and included housing and construction maintenance, as well.

ANDREW'S employment with this non-profit organization ended in January 2005, after the company closed.

22.     Following the non-profit's closure, ANDREW worked a short time in the pre-stressed concrete industry, until finding and accepting a full-time position in June 2005, at Alternative Environments, Inc. Alternative Environments is a residential and commercial landscape maintenance company in Villa Rica, Georgia. While receiving on-going training in the landscape industry, ANDREW envisioned a safer way to maintain roadsides and dangerous and/or sloped terrains. He put his ideas into rough sketches and some details on paper and placed it in a drawer.

23.     KELLI and ANDREW BERRY (**THE BERRYS**) were married in November, 2005.

24.     In 2006, ANDREW was offered a position out-of-state to manage an anticipated satellite branch, and at that time KELLI resigned her position and trained her replacement at the floral shop. The company employing ANDREW decided against an out-of-state branch, but ANDREW retained his position in Georgia. KELLI found, interviewed, and was immediately hired by an Atlanta based company as the Financial and Human Resources Manager, but still maintained a limited part-time position at the floral shop, doing the weekly payroll and weekly and monthly accounting. The owner of the floral shop, KELLI'S aunt, asked many times about KELLI "managing the business" when her aunt and uncle planned to retire, which was to be expected within a few years.

## FACTUAL BACKGROUND INTO PARTIES' ASSOCIATION

25.     In the fall of 2007, ANDREW saw the television program, *Modern Marvels,* which showcased a residential remote controlled lawnmower. ANDREW was very excited because it was very similar to the ideas he had put on paper approximately 2 years earlier. He researched the company, EVATECH, INC., and in early December 2007, ANDREW contacted the owner of the company, LUIS MEDINA. After introducing himself, ANDREW explained his qualifications and experience to MR. MEDINA. ANDREW then asked one question before proceeding, "*Do you believe in God?*" ANDREW asked this because he had been taken advantage of before and wanted to make sure he was speaking with an honest person, believing that someone who openly stated his belief in God, as MR. MEDINA said he did, to be trustworthy. ANDREW proceeded to give MR. MEDINA a great deal of information regarding the landscape industry and the commercial need for a product similar to what ANDREW had envisioned, feeling that the two ideas could be combined very successfully. ANDREW and MR. MEDINA talked many times throughout the next two weeks and not long after, MR. MEDINA contacted ANDREW about becoming a dealer for EVATECH. After discussing the investment required for the dealership in ratio to the anticipated future earnings potential, THE BERRYS decided it was a good investment. ANDREW received his copy of the "Dealer Sales Agreement Letter" (dealer's contract) dated December 20, 2007, including signatures by ANDREW BERRY and LUIS MEDINA on behalf of EVATECH, INC. All sales commissions to ANDREW were to be the agreed on standard dealers' commission: 15% on each residential product and 25% for each

commercial product, also agreed that it was the dealer who determined the purchase price for the customer, thereby determining the dealer's own compensation, taking into account the ratio for time and funds spent on acquiring the sale. To fulfill the financial obligation referred to on the dealership agreement, ANDREW purchased the required "demo" mower through a personal loan procured through a local bank in his area. It was always THE BERRYS true belief, at all times from the date of the signed dealer's contract through LUIS MEDINA'S harsh dismissal of ANDREW from the corporation, EVATECH, INC., that the promise of being paid commissions was genuine and valid, and THE BERRYS acted according to their beliefs as representatives of and for the betterment of the corporation. ANDREW informed MR. MEDINA of several other ideas he had that could be incorporated into EVATECH'S technology, and MR. MEDINA scheduled a conference call with himself, ANDREW and one of EVATECH'S shareholders, Brian Nagamatsu, who is an inventor , patent engineer, and co-owner of one of LUIS MEDINA'S patents. The call took place on January 16, 2008; also at that time an in-person meeting was scheduled for the following week between ANDREW, KELLI, LUIS MEDINA, and TAMMY MEDINA.

26.     THE BERRYS met with LUIS MEDINA at the corporation's business address, which is also MR. MEDINA'S personal residence, on January 25, 2008. ANDREW discussed his commercial design improvements and ideas for the product. THE BERRYS discussed the urgent need for a marketing campaign for the commercial landscape industry, as well as focusing on the disabled and elderly in a broader market. At that time, THE BERRYS received their demo mower. MR. MEDINA had informed ANDREW prior to the meeting and in the January 16th conference call that all of ANDREW'S research, development and improvement would be taken into consideration, and if incorporated into the design, he would receive compensation for a percentage of the profits or be named on an upcoming patent. This promise was repeated by LUIS MEDINA to ANDREW in front of KELLI at a "testing field" near the MEDINA/EVATECH address on the same date of January 25, 2008. This same promise was repeated multiple times to ANDREW over the course of time and association, oftentimes in front of KELLI. TAMMY MEDINA was only present after the conclusion of the business meeting. THE BERRYS also met one of MR. MEDINA's sons.

27.     From the time ANDREW returned home with his mower on January 27, 2008, he began testing and researching his EVATECH product. ANDREW called MR. MEDINA frequently with his improvement ideas, and MR. MEDINA called ANDREW frequently with questions or comments. Also at this time, THE BERRYS began marketing to some of their target areas. The corporation ordered and supplied business cards for ANDREW, bearing his home address, home phone number, cell number and email address, along with the EVATECH website address. ANDREW also received EVATECH shirts.

28.     THE BERRYS scheduled many demonstrations of the product, mostly with large organizations and distributors, as well as landscape companies and individuals.  Throughout the year of 2008, ANDREW requested MANY times a certain mower that customers were requesting for demonstrations. MR. MEDINA always made an excuse why one was not available; in fact, one customer, a large distributor, got so disillusioned with the product being a reality, he even called MR. MEDINA himself to verify; this embarrassed ANDREW, as this was one of his business contacts with his employer, Alternative Environments. It was

over a year later before MR. MEDINA would get ANDREW this product to demonstrate. This cost ANDREW a year's worth of potential earnings. THE BERRYS filed bankruptcy in January, 2009.

29.     In February, 2009, KELLI resigned her position at the Atlanta company after she found a background check done on a prospective new general manager showed criminal theft and fraud. KELLI questioned the owner time and again about the new hire's intent and the best interest of the company. When he was still hired, she did not feel comfortable working there any longer. It is interesting to note, that in May of the same year, the company "closed the doors", and KELLI later learned (from the owner's niece) it was due in part to misappropriated funds by the newly hired manager.

30.     In March of 2009, ANDREW was given two (2) shares of stock in the corporation, EVATECH, INC., by LUIS MEDINA for all of ANDREW'S research and improvements of the corporation's products and THE BERRYS vast marketing campaign to that point. Business sales had improved and interest in the commercial product exploded. It was repeated to both THE BERRYS many times by MR. MEDINA that they had the right be involved in the business aspects of the corporation and to voice opinions since *"you are shareholders"*. It was always THE BERRYS true belief that at all times from the date of the signed and corporate sealed stock certificate through the time of LUIS MEDINA'S harsh dismissal of ANDREW from EVATECH, that the shares were legitimate, and THE BERRYS acted according to their beliefs as shareholders of the corporation.

31.     Many times throughout the course of the business relationship to that point with ANDREW, MR. MEDINA requested ANDREW to leave his employment with Alternative to focus and commit to EVATECH, INC. full-time. Sales for the product had consistently improved, especially the commercial products, and MR. MEDINA had promised ANDREW all sales leads that were generated through the company website to which THE BERRYS had directed all of their marketing. In April, 2009, with knowing that he had many upcoming scheduled commercial demonstrations and would need a great deal of time off, after much consideration and deliberation, ANDREW resigned his position at Alternative Environments to pursue the full-time investment of his opportunity with EVATECH, INC. THE BERRYS elected to keep the health insurance due to KELLI'S health issues, continuing treatments, medication and testing. The referenced scheduled demonstrations procured by THE BERRYS included Home Depot in Atlanta, Georgia, Tractor Supply in Nashville, Tennessee, the LPA National Conference in New York, just to name a few. Most of these required at least a two day trip. MR. MEDINA, on behalf and acting as representation of the manufacturer EVATECH, INC., often accompanied ANDREW on these demonstrations procured by THE BERRYS.

32.     The first week of July, 2009, THE BERRYS and LUIS MEDINA represented EVATECH at the LPA (Little People of America, Inc.) National Conference Expo in New York, funded by the corporation. The final day of the Expo, July 8, 2009, would be the last time THE BERRYS and LUIS MEDINA would work together or have visual contact with each other. After receiving an email from LUIS MEDINA on July 23, 2009, regarding a business meeting, and having recently learned some "disturbing" information relating to MR. MEDINA, THE BERRYS responded to the email requesting MR. MEDINA call THE

BERRYS. MR. MEDINA called the following evening, July 24, 2009; this call was the beginning of this cause of action, and the subject of MR. MEDINA'S COUNT FIVE #1 in his COMPLAINT.

33. It is also essential for THE BERRYS to state that during their association with MR. MEDINA and EVATECH, INC., they had infrequent email, text, or phone contact with EVATECH, INC. employee, TAMMY MEDINA.

## GENERAL ALLEGATIONS

34. THE BERRYS incorporate herein by this reference hereto each and every allegation contained in each of the above paragraphs, including ANSWER to COMPLAINT.

35. THE BERRYS believe and thereon allege that at all relevant times each of the COUNTER-DEFENDANTS was acting within the scope and course of his or her agency and employment with and through EVATECH, INC.

## COUNT ONE – BREACH OF CONTRACT
## (LUIS MEDINA AND EVATECH, INC.)

36. The contract upon which this action is based is the "Dealer Sales Agreement Letter" (dealer's contract) referenced in ¶25 herein, signed by LUIS MEDINA and ANDREW BERRY dated December 20, 2007. **See EXHIBITS A, B, C and D.**

37. As to the issue referenced in ¶32 herein, THE BERRYS and MR. MEDINA had several disagreements about information THE BERRYS had learned, one of which was the alleged theft of ANDREW'S commissions by MR. MEDINA. THE BERRYS also questioned business decisions made by MR. MEDINA and EVATECH, INC., as well as asking about reviewing invoices and sales to make sure they were receiving credit for the sales generated by THE BERRYS. It was a very lengthy call. MR. MEDINA had now decided that in order for ANDREW to receive any compensation from that point, he must establish his own business entity and his own website, but ANDREW'S website would be "*linked on the EVATECH, INC. website*" under the "*dealers' page*". THE BERRYS reasoned with and pleaded their case to MR. MEDINA. THE BERRYS argued the decision was unjust to them because all of the marketing done by THE BERRYS up to that point had been for EVATECH, INC. and directed to the corporation, including many hundreds of emails already sent to numerous individuals and organizations, as well as the correspondence and customer feedback emails received into ANDREW'S personal and EVATECH email addresses. MR. MEDINA was unconcerned, unwilling to listen, and informed THE BERRYS they were "greedy". MR. MEDINA wanted every dealer to compete for business, regardless of geographic region or specific markets already targeted. Other issues were discussed also.

ANDREW informed MR. MEDINA that since it appeared he had no other choice, given the costs, time, research and marketing THE BERRYS had already invested thus far, ANDREW would create his own small company marketing the EVATECH products, as suggested by MR. MEDINA *"like the 'new dealers' have done"*. The new dealers were Co-Defendant in the COMPLAINT, JOHN WRIGHT and a customer of ANDREW'S, **Frank Kolarich**. ANDREW also informed MR. MEDINA that all agreed on commissions for sales generated by ANDREW through EVATECH were still expected, as well as all re-orders from same customers, and gave the example of Home Depot and the LPA. (To that point, ANDREW had received payment for only one commission for a residential sale and one partial payment on a commercial sale. The only other compensation ANDREW has ever received is the two "earned" shares of stock in EVATECH, INC.)

38.    THE BERRYS discussed the situation with each other and decided that the issues were very serious and could have detrimental effects on the corporation. On July 26, 2009, at 12:26 p.m., THE BERRYS contacted the shareholders by email with their concerns. So as not to be seen as having "gone behind his back", MR. MEDINA was also sent this email. **SEE EXHIBIT E.**

39.    There was no response from any of the shareholders; however, there were reactions and responses from MR. MEDINA. Within a few hours of the email, THE BERRYS found that all links and access previously granted to them had been disabled, including ANDREW'S EVATECH email address. This email address had been used for hundreds of marketing and correspondence emails sent to numerous individuals and organizations from THE BERRYS. Also on same date, July 26, 2009, at 2:56 p.m., ANDREW received a curt email from MR. MEDINA stating that ANDREW'S *"shares"* in the corporation *"have been dissolved and you are no longer a shareholder "*. In this same email MR. MEDINA also stated that ANDREW was *"still an EVATECH'S dealer"*. See **EXHIBIT F.**   THE BERRYS responded to MR. MEDINA'S email regarding the shares being "dissolved" on same date. **SEE EXHIBIT G.** Even after all of MR. MEDINA'S and EVATECH'S unwarranted treatment of ANDREW, THE BERRYS still continued to positively promote EVATECH. **SEE EXHIBITS H and I.**

40.    On July 27, 2009 and again on August 11, 2009, KELLI emailed EVATECH requesting payment and interest on commissions not paid for sales generated by, assisted by and/or demonstrated by ANDREW, in which it was known or verified by MR. MEDINA that the customers did purchase at least one product. MR. MEDINA replied that these funds were not owed to ANDREW. (It has been determined since the emails were sent that the funds known owed to ANDREW are actually more.) **SEE EXHIBITS: J, K, L, M, N and O.**

41.    On August 1, 2009, ANDREW discovered that his name had been removed from the dealer page on the EVATECH, INC. website. At 9:08 p.m., ANDREW emailed MR. MEDINA questioning "why" and the date of that "decision". No response or acknowledgement has ever been received. **SEE EXHIBT P.**

42.    ANDREW performed all of the conditions and promises required in accordance with the terms of the contract.

43.    LUIS MEDINA, by and through EVATECH, INC., breached the signed agreement with ANDREW by failing and refusing to perform in good faith the conditions and promises of the dealer's contract, specifically paying promised commissions and allowing dealer to determine sales price, and by terminating ANDREW'S dealership agreement with no notice and with no valid reason.

44.    As a result of the breach in the obligations pursuant to the signed contract, the entire sum of **$8602.34**, plus a fair and just interest rate is now due, owing, and unpaid to ANDREW. Demand has been made on LUIS MEDINA and EVATECH, INC., for repayment, but MR. MEDINA and EVATECH, INC. have failed and refused, and continue to fail and refuse, to repay the known commissions and refuse to disclose what other sales in which ANDREW is owed.  ANDREW also researched and was scheduled to attend the G.I.E. Expo in Louisville, KY in October, 2009, but was wrongly dismissed from EVATECH, INC. before the Expo. MR. MEDINA boasted to potential customers of having sold 20+ mowers at the Expo, which the dealer's commissions would have been owed to ANDREW.  Co-DEFENDANT, JOHNWRIGHT, attended the Expo after ANDREW was terminated, but he was cheated out of these commissions also.  Therefore, a determination of sales and accounting of the amount owed plus interest needs to be made for all stolen sales. **SEE EXHIBITS: Q and R.**

45.    LUIS MEDINA and EVATECH, INC. have therefore breached the signed contract with ANDREW BERRY, who has been damaged thereby in the sum of **$8602.34, and an amount to be determined after an accounting,** plus **interest at the legal rate** from and after the date due.

## COUNT TWO- BREACH OF CONTRACT
## (LUIS MEDINA AND EVATECH, INC.)

46.    The contract upon which this action is based is the "Confidentiality Shareholder Agreement Letter", inclusive of the stock certificate referenced in ¶30 herein, signed by LUIS MEDINA, by and through EVATECH, INC., and also signed by ANDREW BERRY.  MR. MEDINA even requested ANDREW'S social security number for this transaction.  This document is dated March 1, 2009.  **SEE EXHIBITS: S, T and U.**

47.    THE BERRYS hereby incorporate reference and reallege each and every allegation contained in paragraphs 30, 32, 35, and 37 through 39 above.

48.    ANDREW performed all of the conditions and promises required in accordance with the terms of the contract.

49.    LUIS MEDINA, by and through EVATECH, INC., breached the signed agreement with ANDREW by failing and refusing to perform in good faith the conditions and promises of the Shareholder's contract, and by "dissolving" or attempting to illegally dissolve, ANDREW'S stock in the corporation, EVATECH, INC.

14

50.     As a result of the breach in the obligations pursuant to the signed contract, the entire sum of **$20,000.00**, the value stated pursuant to the agreement, is due ANDREW BERRY.  Demand has been made on LUIS MEDINA and EVATECH, INC. for repayment, but MR. MEDINA and EVATECH, INC. have failed and refused, and continue to fail and refuse, to repay the value of earned said shares.

51.     LUIS MEDINA and EVATECH, INC. have therefore breached the signed contract with ANDREW BERRY, who has been damaged thereby in the sum of **$20,000.00**, plus interest at the legal rate from and after the date of MR. MEDINA's stated dissolution.

## COUNT THREE – THEFT
## (LUIS MEDINA AND EVATECH, INC.)

52.     THE BERRYS hereby incorporate by reference and reallege each and every allegation contained in paragraphs 25 through 27 above, as well as each and every allegation in COUNTs ONE and TWO.  ANDREW requests the relief granted in COUNTS ONE and TWO, as well as punitive damages to be determined by a fair and impartial jury for the willfulness of the actions by LUIS MEDINA and EVATECH, INC. in each of these deceitful acts.

53.     In addition, in 2008, ANDREW and KELLI together created a document for use with ANDREW'S commercial landscape customers, demonstrations and THE BERRYS marketing.  The calculations on this document could have only been made by ANDREW, as the properties relate to ANDREW'S clients through his employment with Alternative Environments and were done while ANDREW was in the course of his research and development of EVATECH'S products. THE BERRYS have learned that MR. MEDINA has used and/or is still using this document, as well as ANDREW'S exact calculations, as "Property of EVATECH, INC." without ANDREW'S permission or any type compensation for its use.  See **EXHIBITS: V, W, X and Y**.  THE BERRYS request a fair and just amount be awarded for the use of this document without permission, as well as damages for the willful intent of MR. MEDINA in order to gain profit for himself and the corporation, EVATECH, INC.

## COUNT FOUR – FRAUD
## (LUIS MEDINA AND EVATECH, INC.)

54.     THE BERRYS hereby incorporate by reference and reallege each and every allegation contained in paragraphs 25 through 27, as well as each and allegation herein of COUNTS ONE and TWO, wherein the specifics of these actions, inclusive with the documents breached, most especially the stock certificate issued pursuant to the corporation's Articles of Incorporation and under the Florida Statutes, show, or can be concluded, that the documents were fraudulent when issued.  Fl. St. **817.15 states: *Making false entries, etc., on books of corporation.—Any officer, agent, clerk or servant of a corporation who makes a false entry in the books thereof, with intent to defraud, and any person whose duty it is to make in such***

15

*books a record or entry of the transfer of stock, or of the issuing and canceling of certificates thereof, or of the amount of stock issued by such corporation, who omits to make a true record or entry thereof, with intent to defraud, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.*

55.   As a result of the fraud and misrepresentation of the contracts and stock certificate, ANDREW was not allowed to continue his dealership, therefore not receiving the opportunity for sales commissions, as well as the loss of his earned shares, his part ownership in the corporation and his right to help make business decisions and advance the corporation. After LUIS MEDINA and EVATECH, INC. harshly dismissed THE BERRYS, MR. MEDINA continued the same type behavior with at least two other dealers, those referenced in ¶37. **SEE EXHIBITS: Z and AA (4 page affidavit with 9 attachments).**

56.   After the inspection of the shares certificate document (original is in a safe in THE BERRYS possession), it should be easily determined that LUIS MEDINA and EVATECH, INC. either illegally "dissolved" the earned shares and has committed theft or the document is fraudulent.

57.   Always believing in the authenticity of the documents and the promises of MR. MEDINA, ANDREW continuously did an abundance of research and improvement on the products manufactured by EVATECH, INC., as well as continuous promotion of the corporation and its products. ANDREW has suffered mental stress and intentional harm by LUIS MEDINA and EVATECH, INC. for the intentional issuance of false documents and false representations by MR. MEDINA and the corporation, EVATECH, INC.

58.   ANDREW requests relief in the form of, as stated above, the sum of **$20,000.00** for the stated value of the shares, as well as damages for the pain and suffering intentionally inflicted by LUIS MEDINA and EVATECH, INC.

## COUNT FIVE – RIGHT OF PUBLICITY
## (LUIS MEDINA AND EVATECH, INC.)

59.   On February 26, 2009, a video was posted on LUIS MEDINA'S personal YouTube account and also on the business website of EVATECH, INC. The said video featured ANDREW demonstrating an EVATECH commercial product with his voice giving detailed explanations of the use and safety of the product, indicating ANDREW'S occupation as a professional landscaper, and his full name was computer generated at the end of the video.

60.   This video was never approved for publication by ANDREW, nor is there any signed contract for the use of ANDREW'S likeness, etc.

61.   After the issue referenced in ¶27 **and ¶'s 37-41**, ANDREW requested multiple times to MR. MEDINA and EVATECH, INC. to remove the video due to the unlawful use of ANDREW'S name and likeness. THE BERRYS informed MR. MEDINA if it was not removed immediately they would request a percentage of total sales profits of the corporation for the

period the video remained in use.  It was also determined that the video was posted by the same user "*lmedinaxyz*" on at least ten other websites relating to the landscape and/or mower industry.  MR. MEDINA continually refused, saying it was the property of EVATECH, INC. and he would use it as he wished.  There was also no other videos of any other dealers demonstrating the EVATECH products or discussing landscape terrains, etc.  ANDREW'S video was always one of the top two most viewed videos of MR. MEDINA'S.

62.   After the harsh, unfounded and unfair treatment of ANDREW, he was embarrassed and disgusted with his likeness being used to gain profit for LUIS MEDINA and EVATECH.  After several attempts to get the video removed, THE BERRYS finally went through the legal department at YouTube, and it was removed for "violating terms of service".  However, as of this date the video can still be found on-line and is linked to the EVATECH, INC. homepage.  **SEE EXHIBITS: BB, CC, DD, EE, and FF.**

63.   ANDREW'S continuous "assumed" endorsement of EVATECH and its products through this video has caused embarrassment and continuous mental anguish to ANDREW, as well as personal embarrassment for his professional reputation in association with EVATECH.

64.   As a result of the violation of ANDREW'S RIGHT OF PUBLICITY, pursuant to Florida Statute 540.08, ANDREW should be compensated a reasonable royalty and punitive and exemplary damages, as "*the remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy*".

## COUNT SIX – THREAT OF BODILY HARM
## (TAMMY MEDINA)

65.   In August 2010, THE BERRYS, learned of the extremely similar, if not almost identical experiences of the two dealers referenced in ¶37.  With this information, on August 16, 2010, at 11:58 a.m., KELLI again attempted to appeal to the common and business decency of the shareholders to investigate LUIS MEDINA and EVATCH, INC.  As requested, this email was not sent to LUIS MEDINA or TAMMY MEDINA.  However, one of the shareholders evidently, as was expected, forwarded a copy of the email to MR. and/or MRS. MEDINA.  At 5:26 p.m. on the same date, TAMMY MEDINA, through her EVATECH email address, sent KELLI *("and Drew")* a very hateful and disgusting email containing threats of bodily harm.  This email can be viewed in Plaintiff's **COMPLAINT, EXHIBIT Y**, page 4 & 5, with the detailed threat in the first paragraph, lines 4 & 5.

66.   Pursuant to Florida Statute 836.10, "*Any person who writes or composes and also sends or procures the sending of any letter, inscribed communication, or electronic communication, whether such letter or communication be signed or anonymous, to any person, containing a threat to kill or to do bodily injury to the person to whom such letter or communication is sent, or a threat to kill or do bodily injury to any member of the family of the person to whom such letter or communication is sent commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.*"

17

67.   THE BERRYS request relief per this statute in the form of the stated criminal felony punishments, as they have suffered repeatedly due to the threats and statements made by TAMMY MEDINA, and continue to suffer mental anguish, believing TAMMY MEDINA to be vindictive and would stop at nothing to keep THE BERRYS from exposing the deceitful and unlawful actions of LUIS MEDINA and EVATECH, INC. After this threat, KELLI insisted ANDREW teach her how to load and reload his gun and to keep it near her at all times. KELLI also experiences panic attacks over outings and unexpected sounds.

## COUNT SEVEN – LIBEL, SLANDER, AND MALICIOUS DEFAMATION
## (LUIS MEDINA, TAMMY MEDINA, AND EVATECH, INC.)

68.   In addition to the many and blatantly false charges in LUIS MEDINA'S COMPLAINT, LUIS and TAMMY MEDINA, by and through the corporation, EVATECH, INC., have publicly maliciously slandered and defamed both ANDREW and KELLI BERRY numerous times.

69.   A few examples of public Internet postings, a BBB response to complaint report and an email are included. At one point, one of the posting sites had received almost 1000 views, and as seen by some of the other posters' comments, it is obvious that these claims by the COUNTER-DEFENDANTS were believed by some individuals.
**SEE EXHIBITS: GG, HH and II.**

70.   Pursuant to Florida Statute 836.01, "*Any person convicted of the publication of a libel shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083*". Statements made by TAMMY MEDINA, by and through the name of EVATECH, maliciously and falsely state that THE BERRYS "*were caught committing fraud and infringing on the patented products of Evatech, Inc.*". TAMMY MEDINA also vindictively asserted that when ANDREW "*could not make sales legitimately, he resorted to fraud and other underhanded acts*". THE BERRYS have never "*attacked*" MRS. MEDINA'S "*one year old son*" or any child or individual for that matter, and TAMMY MEDINA has posted this same allegation many other times, except the number of children and their ages keep changing. KELLI has a proven superb and untarnished reputation with regards to children and can be substantiated by those willing to testify, such as her former husband and father of her children, former employers, and family members, including KELLI'S children. ANDREW repeats the same facts on his behalf of these blatantly malicious allegations.

71.   THE BERRYS requests relief per this statute in the form of the stated punishments, as KELLI has suffered repeatedly due to the maliciously false statements. The custody of her minor child could have been and can still be in jeopardy due to these blatantly false allegations. KELLI began experiencing depression, panic attacks and severe health issues and had to quit substitute teaching, her only form of income, when TAMMY MEDINA continued to make these allegations. Fear and embarrassment of so many reading and believing these malicious claims continues to plague KELLI, and each time she has had to

18

67. THE BERRY'S request relief per this statute in the form of the stated criminal felony punishments, as they have suffered repeatedly due to the threats and statements made by TAMMY MEDINA, and continue to suffer mental anguish, believing TAMMY MEDINA to be vindictive and would stop at nothing to keep THE BERRYS from exposing the deceitful and unlawful actions of LUIS MEDINA and EVATECH, INC. After this threat, KELLI insisted ANDREW teach her how to load and reload his gun and to keep it near her at all times. KELLI also experiences panic attacks over outings and unexpected sounds.

**<u>COUNT SEVEN – LIBEL, SLANDER, AND MALICIOUS DEFAMATION</u>**
**<u>LUIS MEDINA, TAMMY MEDINA, AND EVATECH, INC.</u>**

68. In addition to the many and blatantly false charges in LUIS MEDINA'S COMPLAINT, LUIS and TAMMY MEDINA, by and through the corporation, EVATECH, INC., have publicly maliciously slandered and defamed both ANDREW and KELLI BERRY numerous times.

69. A few examples of public Internet postings, a BBB response to complaint report and an email are included. At one point, one of the posting sites had received almost 1000 views, and as seen by some of the other posters' comments, it is obvious that these claims by the COUNTER-DEFENDANTS were believed by some individuals.
SEE EXHIBITS GG, HH and II.

70. Pursuant to Florida Statute 836.01, "*Any person convicted of the publication of a libel shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083*". Statements made by TAMMY MEDINA, by and through the name of EVATECH, maliciously and falsely state that THE BERRYS "*were caught committing fraud and infringing on the patented products of Evatech, Inc.*". TAMMY MEDINA also maliciously asserted that when ANDREW "*could not make sales legitimately, he resorted to fraud and other underhanded acts*". THE BERRYS have never "*attacked*" MRS. MEDINA'S "*one year old son*" or any child or individual for that matter, and TAMMY MEDINA has posted this same allegation many other times, except the number of children and their ages keep changing. KELLI has a proven superb and untarnished reputation with regards to children and can be substantiated by those willing to testify, such as her former husband and father of her children, former employers, and family members, including KELLI'S children. ANDREW repeats the same facts on his behalf of these blatantly malicious allegations.

71. THE BERRY'S requests relief per this statute in the form of the stated punishments, as KELLI has suffered repeatedly due to the maliciously false statements. The custody of her minor child could have been and can still be in jeopardy due to these blatantly false allegations. KELLI began experiencing depression, panic attacks and severe health issues and had to quit substitute teaching, her only form of income, when TAMMY MEDINA continued to make these allegations. Fear and embarrassment of so many reading and believing these malicious claims continues to plague KELLI, and each time she has had to

explain the reason for being sued, she experiences more added stress, anguish and embarrassment.

72.   As representative of EVATECH, LUIS MEDINA made the maliciously false claim to a government representative, that ANDREW was *"terminated because of his illegal activities which included, steeling [sic], fraud, and more"*. This included with all the other appallingly spiteful accusations, created undue stress and mental anguish for ANDREW, while continually worrying over his slandered business reputation and moral character, and he continues to suffer mental anguish. Each time ANDREW has had to explain the reason he is being sued, especially when applying for jobs, it creates added stress, anguish and embarrassment.

73.   TAMMY AND LUIS MEDINA, by and through EVATECH, INC., acted with wanton and reckless indifference simply out of spite, vengeance and ill-will.

## COUNT EIGHT – TORTIOUS INTERFERENCE
## (LUIS MEDINA AND EVATECH, INC.)

74.   As referenced and Exhibited by LUIS MEDINA in his COMPLAINT, an email from ANDREW was sent to customer, David McNeill, with Transylvania County in North Carolina. This was ANDREW'S customer, as he demonstrated and promoted the product to Transylvania County on February 20, 2009, along with MR. MEDINA in attendance representing EVATECH, INC. The email from ANDREW is **EXHIBIT T of MEDINA'S COMPLAINT** and is self-explanatory. This organization presented a great opportunity for sales for ANDREW, as he was told by Mr. McNeill in MR. MEDINA'S presence that *"what one county did in that area, other counties usually followed suit"*. ANDREW was present with MR. MEDINA on June 17, 2009, when he received the call from Mr. McNeill for the product purchase. After ending the call with Mr. McNeill, MR.MEDINA proceeded to explain to ANDREW how that particular product was not in existence at the time. This statement by MR. MEDINA then alerted ANDREW to the reason MR. MEDINA kept stalling and could not supply the requested mower for the demo, which had happened multiple times for many months with many other demos. MR. MEDINA and ANDREW discussed the creation of this particular product.

75.   After the issues referenced in ¶**37 above** transpired, after much thought and consideration to his professional reputation, on August 11, 2009 ANDREW sent the email referenced in MEDINA'S COMPLAINT. In response to ANDREW'S email MR. MEDINA replied to Mr. McNeill with blatantly false and malicious lies. **SEE EXHIBIT II of COUNT SEVEN.**

76.   ANDREW never received the commission for this sale. The blatantly false claims by MR. MEDINA apparently injured ANDREW'S reputation with this and surrounding counties because after attempting to contact Mr. McNeill several times, ANDREW has still never received any return correspondence from Mr. McNeill or the county agency.

## COUNT NINE – NEGLIGENCE
## (LUIS MEDINA, TAMMY MEDINA, AND EVATECH, INC.)

77.   THE BERRYS hereby incorporate by reference and reallege each and every allegation contained and incorporated in this entire pleading, showing COUNTER-DEFENDANTS all acted with total and complete negligence and caused repeated and continued undue stress, mental anguish and financial burdens on both ANDREW and KELLI BERRY.

78.   KELLI kept a private journal that details the anguish both ANDREW and KELLI BERRY suffered and still suffers for the negligent acts perpetuated by the COUNTER-DEFENDANTS and their entire want of care. She also kept, and still keeps, yearly calendar appointment books. Due to the losses suffered, THE BERRYS were not able to continue to afford their health insurance and have been without it since August, 2009. KELLI was and has not been able to continue her medication, testing and treatment and has suffered tremendous pain. THE BERRYS also lost their home in foreclosure in 2010, and are now living with friends, leaving KELLI embarrassed and unable to provide shelter for her youngest child, which furthers depresses, humiliates and causes anguish to KELLI and her minor child.

79.   THE BERRYS request relief for the repeated mental and physical suffering in the form of damages to be determined by a fair and impartial jury.


## COUNT TEN - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (LUIS MEDINA, TAMMY MEDINA AND EVATECH, INC.)

80.   THE BERRYS hereby incorporate by reference and reallege each and every allegation contained and incorporated in this entire pleading, showing COUNTER-DEFENDANTS have intentionally inflicted undue emotional distress on both ANDREW and KELLI BERRY, including the reckless filing of LUIS MEDINA'S COMPLAINT with false allegations, especially the outrageous claims of patent infringement and theft of intellectual property with absolutely no possible way of proving these false claims with material facts or witnesses, no prior contact or notice and did absolutely no pre-suit investigation, as is obvious since the co-owner of one of the patents is not even involved as a party. The patent infringement and theft of intellectual property charges were only claimed to ensure THE BERRYS would be needlessly dragged through FEDERAL COURT in Tampa, Florida and to ensure that THE BERRYS would also be financially burdened. KELLI'S journal, again, can detail the anguish. TAMMY MEDINA even sent a viral email from her **personal** email address to THE BERRYS, which infected their computer and has not been able to be recovered, leaving important documents and treasured pictures lost. This added even more anguish, undue stress and financial burdens on THE BERRYS. **SEE EXHIBIT JJ.**

81.   The COUNTER-DEFENDANTS have acted with willful misconduct, malice, fraud, oppression, wantonness, and an entire want of care, raising a presumption of conscience indifferences of the consequences to THE BERRYS. THE BERRYS request relief for the

## COUNT NINE - NEGLIGENCE
### (LUIS MEDINA, TAMMY MEDINA AND EVATEK, INC.)

77.   THE BERRYS hereby incorporate by reference and reallege each and every allegation contained and incorporated in this entire pleading, showing COUNTER-DEFENDANTS all acted with willful and complete negligence and cannot expect and readily recover for and/or absorb for any anguish and financial burdens on both ANDREW and KELLI BERRY.

78.   KELLI kept a private journal that details the anguish both ANDREW and KELLI deeply suffered and still suffers for the negligent acts perpetuated by the COUNTER-DEFENDANTS and their entire want of care. She also kept, and still keeps, ready calendar appointment books. Due to the losses suffered, THE BERRYS were not able to continue to afford their health insurance and have been without it since August 2009.  KELLI was and has not been able to continue her medication taking and treatment and has suffered serious loss pain. THE BERRYS also lost their home to foreclosure in 2010, and are now living with friends, leaving KELLI embarrassed and unable to provide shelter for her youngest child, which further depresses, humiliates and causes anguish to KELLI and her minor child.

79.   THE BERRYS request relief for the repeated mental and physical suffering in the form of damages to be determined by a fair and impartial jury.

## COUNT TEN - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (LUIS MEDINA, TAMMY MEDINA AND EVATEK, INC.)

80.   THE BERRYS hereby incorporate by reference and reallege each and every allegation contained and incorporated in this entire pleading, showing COUNTER-DEFENDANTS have intentionally inflicted undue emotional distress on both ANDREW and KELLI BERRY, including the reckless filing of LUIS MEDINA'S COMPLAINT with false allegations, specifically the outrageous claims of patent infringement and theft of intellectual property, with absolutely no possible way of proving those false claims with material facts or witnesses, no prior contact or notice and did absolutely no pre-suit investigation, as is obvious, since the co-owner of one of the patents is not even involved in a party.  The patent infringement and theft of intellectual property patents were only claimed to ensure THE BERRYS would be needlessly dragged through FEDERAL COURT in Tampa, Florida and to ensure that THE BERRYS would also be financially burdened.  KELLI'S journal, again, can detail the anguish.  TAMMY MEDINA even sent a viral email from her personal email address to THE BERRYS, which inflicted further emotional and has not been able to be recovered, lost log important documents and treasured pictures lost.  This added even more anguish and/or stress and financial burdens on THE BERRYS.  SEE EXHIBIT L.

81.   The COUNTER-DEFENDANTS have acted with willful misconduct, malice, fraud, oppression, wantonness, and in conscious want of care, taking a presumption of conscience indifference of the consequence as to THE BERRYS.  THE BERRYS cannot relief for the

repeated mental and physical suffering in the form of damages to be determined by a fair and impartial jury.

## RELIEF REQUESTED

The preceding factual statements and allegations are incorporated herein by reference.

82.   **DAMAGES.** As a direct and/or proximate result of COUNTER-DEFENDANTS' wrongful actions and/or inaction as described above, COUNTER-PLAINTIFFS have suffered, and continue to suffer, damages in the form of, inter alia, the continuing financial burdens associated with defending the vexatious claims of the original COMPLAINT through this Court, out of pocket expenses, anxiety, emotional distress, loss of privacy, and other economic and noneconomic harm—for which they are entitled to compensation. COUNTER-PLAINTIFFS are also entitled to recover **statutory damages** and/or **nominal damages.**

83.   **Speculative Damages** should be awarded to THE BERRYS, for the false charges of patent infringement in which their names will always be linked, and is reasonably likely to occur because, as even admitted in an email to the other shareholders, ANDREW is an inventor, and being linked with claims of patent infringement, etc. will always plague him and cause others to be wary of his intentions;

84.   THE BERRYS also request all **actual damages and compensatory damages;**

85.   **EXEMPLARY/PUNITIVE DAMAGES.** THE BERRYS are also entitled to exemplary and/or punitive damages as punishment and to deter such wrongful conduct in the future;

86.   Reimbursement for any medical and/or mental health care received or sought while enduring the stress, physical pain and mental anguish associated with this litigation;

87.   All litigation expenses and costs, including costs of travel, as THE BERRYS reside in Georgia;

88.   Pre- and post-judgment interest at the highest applicable legal rates;

89.   All attorneys' (if and/or when one can be afforded to retain) fees and litigation expenses incurred through trial and any appeals;

90.   All costs of suit; and

91.   All such other and further relief that this Court deems just and proper.

## **JURY DEMAND**

COUNTER-PLAINTIFFS respectfully demand a trial by jury on all of their claims and causes of action so triable.


**WHEREFORE,** in filing the ANSWER to the civil summons and COMPLAINT with the above response and by submitting the above COUNTERCLAIMS, **THE BERRYS** pray for the above requested relief and respectfully request that the Court enter judgment dismissing Plaintiff's claims against Defendants.


Respectfully submitted this 20th day of January, 2012,


Andrew Berry


Kelli Berry
214 Hunters Way
Villa Rica, GA 30180
770-480-9615
Email: dawgluvr1437@yahoo.com

22

## CERTIFICATE OF SERVICE

We HEREBY CERTIFY that on the _20th_ day of January 2012, we filed the foregoing with the Clerk of Court by United States mail and to Plaintiff/Counter-defendants and co-defendant listed below, mailed by a third party listed below:

> Gregory J. Orcutt, Esquire
> P.O. Box 260275
> 4921 Memorial Highway, Suite 200
> Tampa, FL 33634
>
> John Wright
> 304 S. Central Ave.
> New Albany, MS  38652

We further certify that we have caused the following process of service to COUNTER-DEFENDANT, TAMMY MEDINA to be served:

> Tammy Medina
> 3153 Prides Crossing
> Tarpon Springs, FL 34688

Andrew Berry

Kelli Berry
214 Hunters Way
Villa Rica, GA  30180
Email: dawgluvr1437@yahoo.com

23

I certify that I am over 18 years of age and mailed, under no threats or any other force, to the individuals and/or attorney(s) named below, an ANSWER to a civil summons and COUNTERCLAIMS on behalf of ANDREW and KELLI BERRY.

Gregory J. Orcutt, Esquire
(On behalf of LUIS MEDINA and EVATECH, INC.)
P.O. Box 260275
4921 Memorial Highway, Suite 200
Tampa, FL 33634


John Wright
304 S. Central Ave.
New Albany, MS  38652



Signed and submitted this _20th_ day of January, 2012,



Charles J. Chatwood
214 Hunters Way
Villa Rica, GA  30180

24